**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: VERTRUE MARKETING | ) | **CASE NO. 09-vm-75000** |
| and SALES PRACTICES LITIGATION | ) | |
| | ) | **(MDL Docket No. 2044)** |
| | ) | |
| | ) | |
| | ) | **Amended Memorandum of Opinion** |
| | ) | **and Order** |
| | ) | |
| | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |

This Court previously issued a Memorandum of Opinion and Order dated February 25,

2010, addressing defendants' motion to dismiss.  Defendants have asked this Court to certify the

Order for an interlocutory appeal.  In addition, under the guise of a motion for reconsideration

(Doc. 51), defendants now argue a new basis for dismissal of the RICO claims.  Plaintiffs also

request[1] that the Court address the issue of judicial estoppel, an issue the Court declined to reach

in its February 25th Order.  Because this Court is granting defendants' request for certification of

an interlocutory appeal, the Court concludes that, to aid in an appeal of this matter, amendment

---

[1]     Plaintiffs' request is set forth in their brief in opposition to
defendants' motion to certify an interlocutory appeal.

1

of the February 25, 2010 Order is appropriate.  Accordingly, the Order is hereby amended and restated as set forth herein.  This Order supersedes the February 25, 2010 Order.

**INTRODUCTION**

This matter is before the Court upon Vertrue Incorporated and Adaptive Marketing LLC's Motion to Dismiss and Strike Claims and Class Allegations Under the Statute of Limitations ("Motion to Dismiss") (Doc. 18).  This is an MDL action involving sales and marketing practices engaged in by defendants.  For the reasons that follow, the Motion to Dismiss is GRANTED in PART and DENIED in PART.   The following claims are dismissed: all claims for negligent misrepresentation, money had and received, all claims asserted under state law consumer protection statutes, and all RICO claims.  In addition, all claims for which fraudulent concealment tolling is required, as set forth in Doc. 40, are dismissed.  All other claims remain pending.  Defendants' request to strike the class allegations is DENIED.

**FACTS**

This case consists of a group of 13 cases filed in various jurisdictions and transferred to this Court by the Judicial Panel on Multidistrict Litigation ("MDL panel") for coordinated pretrial purposes.  Details regarding the original 13 complaints are as follows,

| Case name | Filing date | Jurisdiction | Class allegations |
|-----------|-------------|--------------|-------------------|
| Callahan | 1/08/09 | CA state court | seeks certification of a CA class |
| Waslin | 1/22/09 | D. Ct | seeks certification of a nationwide class |
| Smith, et al., | 1/15/09 | OH state court | seeks certification of an OH class |

2

| Limon, et al., | 3/03/09 | AZ state court | seeks certification of an AZ class |
| Douthitt, et al., | 3/24/09 | NC state court | seeks certification of NC class |
| Brammer, et al., | 5/08/09 | E.D. Va | seeks certification of a nationwide class |
| Rosenzweig, et al., | 3/19/09 | FL state court | seeks certification of a FL class |
| Gucker | 2/27/09 | ID state court | seeks certification of an ID class |
| Malloy, et al. | 4/14/09 | IL state court | seeks certification of an IL class |
| Thornton, et al. | 4/16/09 | NY state court | seeks certification of a NY class |
| Sheehan | 3/30/09 | MA state court | seeks certification of a MA class |
| Zorn, et al. | 4/02/09 | D. Minn | seeks certification of a nationwide class |
| McKay, et al. | 2/23/09 | District of Columbia Superior Court | seeks certification of a class of D.C. residents |

Upon the transfer of these actions by the MDL panel, plaintiffs filed a collective consolidated amended complaint.  Defendants, Vertrue Incorporated ("Vertrue") and Adaptive Marketing LLC, indicated that they intended to seek dismissal of the complaint and requested that the Court divide briefing into two phases.  This Court agreed and, therefore, currently pending is defendants' Motion to Dismiss, which addresses only the statute of limitations.  Accordingly, the Court sets forth only those facts necessary for a resolution of defendants' motion.

Generally speaking, the complaint alleges that defendants engaged in a practice of

3

making unlawful charges to plaintiffs' and the class members' credit and/or debit cards after plaintiffs called to purchase a product sold on television.  This product is alleged to be the "bait" product.  According to the complaint, after obtaining credit or debit card information from plaintiff to purchase a product, the telemarketer reads a prepared script in an effort to enroll the caller in a  "membership" program offered by Vertrue.  At the time of the alleged misconduct, Vertrue operated as MemberWorks, Incorporated ("MWI").  MWI prepared the script and paid the telemarketers and the "bait" product suppliers a fee for each consumer enrolled in the membership program.  According to the complaint, the script deceptively informs the purchaser that "free" materials will be sent in the mail.  Thereafter, upon receipt of the credit or debit card information, MWI mailed a membership card to the purchaser and placed a recurring annual charge of $60-$170 on the credit or debit card.  This charge renewed annually unless the purchaser called to cancel the membership.  In the event a particular purchaser discovered the charge, MWI would "reverse" the charge.

On November 29, 2000, a class action was filed in Ohio state court, captioned *Ritt v. Billy Blanks Enterprises* (sometimes, the "*Ritt* Action").  In *Ritt*, plaintiffs purchased Tae-Bo videotapes after viewing a television advertisement.  Thereafter, the plaintiffs incurred charges on their credit cards for "memberships."  The complaint contains various allegations describing the Tae-Bo phenomenon and the marketing efforts made in connection with the Tae-Bo videotapes.  Each named plaintiff is alleged to have purchased a Tae-Bo videotape.  In various places, however, the complaint refers to the purchase of "Tae-Bo tapes and *other products*."  *See*, *e.g.*, *Ritt* Action, Third Amended Class Action Complaint at ¶¶ 24, 25, 35, 59 (emphasis added).  *Ritt* sought to certify a nationwide class of individuals "who were charged unauthorized fees (or

4

similar unauthorized charges) on their credit card or debit card accounts in connection with enrollment in an MWI membership program."  (*Id*. at 30).

On February 6, 2002, the trial court denied Ritt's motion for class certification.  Plaintiffs appealed the denial and, on July 10, 2003, the court of appeals reversed and remanded the matter for further consideration.  On remand, the trial court entered an order granting class certification for a class of "residents of Ohio who...called a toll free number marketed by [defendants] and purchased any Tae-Bo product, and subsequently [incurred unauthorized charges.]" Defendants and plaintiffs cross-appealed the ruling.  Plaintiffs argued that the trial court erred in limiting the class to Ohio residents, as opposed to certifying a nationwide class.  The court of appeals rejected the argument and modified the class definition.  The modification is not relevant for purposes of this motion.  At the end of the day, the certified class included all Ohio residents who purchased Tae-Bo products and incurred credit card charges for an MWI membership.  One of the defendants, West Corporation ("West"), entered into a settlement with plaintiffs and, as a result of the settlement, the claims against MWI were dismissed.  The final judgment entry was issued on December 11, 2008.

Meanwhile, on March 28, 2002, a class action was filed in federal court in the Southern District of California, captioned *Sanford v. West* (sometimes, the "*Sanford* Action").  In *Sanford*, plaintiff sought to represent a national class of individuals enrolled in the MWI membership program.  Defendants moved to compel arbitration, dismiss the claims, stay the *Sanford* Action in deference to the *Ritt* Action, and strike the class allegations.  West, who was also named in the *Sanford* Action, joined in the motion to dismiss.  The court granted defendants' motion to compel arbitration and denied the motion to stay as moot.  In compelling the claims to

arbitration, the court noted that, because the arbitration provision did not expressly preclude class treatment, it was not unconscionable. The court did not rule on either the motion to dismiss or the motion to strike. The court did, however, grant West's motion to dismiss finding that the federal claim asserted against West lacked merit and declined to exercise supplement jurisdiction over the state law claims asserted against West.[2]

The arbitrator concluded that the district court did not order the issue of class certification to arbitration. He further concluded that no contract existed between plaintiffs and defendants because of the nature of the sales pitch. Later, the trial court confirmed the arbitration award and refused to permit the Smiths, who are named parties in this lawsuit, to intervene as named parties in the *Sanford* Action.

On April 25, 2003, plaintiffs moved the trial court to clarify and/or reconsider whether the arbitration order was intended to allow the arbitrator to address the class certification issue. The trial court denied the motion. Thereafter, on May 8, 2003, plaintiffs moved the trial court to certify the class. The trial court denied the motion "in light of the Court's denial of Plaintiff's motion for reconsideration." Specifically, the court held that it had compelled the individual claims to arbitration and dismissed the class claims as moot.

On April 16, 2007, the Ninth Circuit reversed the arbitration order. In addition, the Ninth Circuit held that the class allegations are no longer moot. It further ordered the trial court to reconsider its ruling regarding the intervention of the Smiths.

---

[2] Plaintiffs refiled their state law claims against West in California state court. It appears that these claims were ultimately settled as part of a global settlement, which included the claims filed against West in *Ritt*.

6

On remand, the trial court concluded that one of the two federal claims, *i.e.*, the claim for the wrongful mailing of unordered merchandise, failed to state claims for which relief may be granted.  In addition, the court concluded that the named plaintiffs lacked standing to assert the remaining federal claim, *i.e.*, violation of the Electronic Funds Transfer Act ("EFTA").  Thus, on September 30, 2008, the court issued an order dismissing the federal claims and declining to exercise supplemental jurisdiction over the state law claims.  It appears that plaintiffs sought leave to amend their complaint in the event the court dismissed the claims.  Ultimately, the court directed plaintiffs to file a motion for leave to amend in order to demonstrate that their proposed RICO claim would not be futile.  The court further directed that the proposed amended complaint not contain any previously dismissed claims.

On November 17, 2008, plaintiffs filed a motion for leave to amend.  The proposed amended complaint included a RICO claim, as well as the previously dismissed state law claims for which the court had declined to exercise supplemental jurisdiction.  In addition, plaintiffs purported to add certain unnamed class members, including Michael Waslin, who is a named plaintiff in this lawsuit, in order to cure the standing defect found to exist with respect to a previously dismissed federal claim.

Thereafter, defendants moved to strike the addition of the previously unnamed plaintiffs, the allegations regarding the previously dismissed federal claim, and the state law claims.  On December 23, 2008, the Court granted defendants' request to strike these allegations.  On March 6, 2009, the trial court denied leave to amend to include RICO claims, finding that such an amended would be futile.

Thereafter, the cases that form this MDL were filed.  On January 15, 2009, the Smiths,

named class representatives in *Sanford*, refiled the dismissed state law claims in Ohio state court.

*Waslin*, a proposed class representative in *Sanford*, refiled the dismissed EFTA claim.  The

remaining actions were filed by previously unnamed class members in *Sanford*.  Upon transfer

by the MDL Panel, plaintiffs filed an 11 count consolidated amended complaint.  Count one is a

claim for violation of the EFTA.  Counts two through five allege violation of the Racketeer

Influenced and Corrupt Organizations Act ("RICO").  Count six alleges violation of the states'

consumer protection statutes.  Counts seven and eight allege conversion and unjust enrichment,

respectively.  Count nine is a claim for fraud.  Count ten is a claim for negligent

misrepresentation and count eleven alleges "money had & received."

Defendants move to dismiss the complaint on statute of limitations grounds and plaintiffs

oppose the motion.

### STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in

favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).

Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's

claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint

must set forth "more than the bare assertion of legal conclusions."  *Allard v. Weitzman* (*In Re*

*DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).  Legal conclusions and unwarranted

factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule

12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702

(6th Cir. Nov. 21, 1996),  *unpublished*.  Dismissal is proper if the complaint lacks an allegation

8

regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id.* at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6 th Cir.2009).

## ANALYSIS

Defendants argue that plaintiffs' claims are barred by the applicable statutes of limitations. Although addressing the individual claims, defendants focus heavily on whether this case can proceed as a class action. According to defendants, the claims asserted in the complaint are facially time-barred. Defendants argue that any applicable tolling doctrine may not be applied to allow this matter to proceed as a class action. At best, according to defendants, certain claims for certain individual plaintiffs may survive.[3] Plaintiffs on the other hand, invoke four

---

[3]    Defendants argue that *Medical Mut. Of Ohio v, K. Amilia Enterprises, Inc.*, 548 F.3d 383 (6th Cir. 2008) renders renewal

9

theories in support of their position that this case may properly be maintained as a class action. According to plaintiffs, the tolling doctrine set forth in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974) applies to this matter.  In addition, plaintiffs claim that even if *American Pipe* does not toll the class claims, the tolling provision set forth in 28 U.S.C. § 1367(d) renders the claims timely.  Alternatively, plaintiffs claim that the doctrines of fraudulent concealment and estoppel apply.  Each argument will be addressed in turn.

       1.        Tolling under *American Pipe*

As an initial matter, the Court notes that from the face of the complaint, nearly all of the claims appear time-barred.   Thus, plaintiffs bear the burden of establishing that their claims may nonetheless proceed.

In *American Pipe*, the Supreme Court addressed the interplay between statutes of limitations and Rule 23 of the Federal Rules of Civil Procedure.  In *American Pipe*, plaintiff timely filed a class action on behalf of itself and other similarly situated governmental entities. The district court denied plaintiff's motion for class certification and, eight days later, 60 governmental entities sought to intervene in the action.  Defendants opposed intervention on the grounds that the statute of limitations passed prior to the filing of the motions to intervene.  The district court agreed and intervention was not permitted.  The Supreme Court reversed, finding,

    ...the claimed members of the class stood as parties to the suit until and unless

_____

      charges untimely.  In this Opinion, the Court concludes that the vast majority of the claims are timely filed.  At this point, the Court declines to reach whether a particular state or federal claim is timely with respect to a specific renewal charge.  Rather, the Court finds that defendants have preserved this issue and that, to the extent necessary, it may be raised in the context of class certification or summary judgment.

they received notice thereof and chose not to continue.  Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs.

*Id*. at 522.

After noting that its holding is "most consistent" with the purposes of federal class action rules, the Court reasoned,

The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claim brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

*Id*. at 554-55 (internal quotations and citations omitted).

Thus, the Court ultimately held that the filing of a class action tolls the applicable statute of limitations for unnamed class members who timely file motions to intervene in the pending lawsuit.  Later, in *Crown, Cork & Seal Co., Inc.*, 462 U.S. 345 (1983), the Court reasoned that *American Pipe* should be extended beyond intervention.  There, the Court quoted *American Pipe* in concluding,

...the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

*Id*. at 353-54.

As a result of these two decisions, the applicable statute of limitations is tolled for unnamed class members during the pendency of a class action until such time as class certification is denied.  The Court will refer to this doctrine as "*American Pipe* tolling."

11

Subsequent to *American Pipe* and *Crown, Cork & Seal*, the Sixth Circuit addressed whether an unnamed plaintiff who benefits from *American Pipe* tolling may assert claims on behalf of a class.[4]  *See*, *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988).  The Sixth Circuit rejected the concept:

> We also agree with the district court's conclusions concerning the plaintiffs' attempt to gain classwide relief.  The courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class.

*Id.* at 149.

The parties strenuously argue over the applicability of *Andrews* to the facts of the instant case.  On the one hand, defendants argue that *Andrews* creates a bright line rule prohibiting the "stacking" or "piggy-backing" of class treatment of claims tolled by *American Pipe* in all circumstances.  On the other hand, plaintiffs argue that *Andrews* does not address the precise issue faced by this Court.  Specifically, plaintiffs point out that *Andrews* addressed whether tolled claims may be asserted on behalf of a class where a prior court had previously denied a motion for class certification.  According to plaintiffs, the court in the *Sanford* Action never reached the issue of class certification.  As such, *Andrews* is easily distinguishable.

Upon review, the Court agrees with plaintiffs that *Andrews* cannot be read as broadly as

---

[4]  In an MDL proceeding, the transferee court applies the federal law of the circuit in which it is located.  *See, In Re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996); *See also*, *In Re Cardizem CD Antitrust Litig.*, 332 F.3d 896, n.17 (6th Cir. 2003); *Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir. 2000); *In re SmartTalk Teleservices, Inc. Securities Litigation*, 487 F.Supp.2d 914, 920 (S.D. Ohio 2007).  Thus, to the extent differences exist among jurisdictions, Sixth Circuit law controls.

defendants urge.  There is a clear distinction between the subsequent filing of an otherwise stale

class action where a prior court has already ruled that class certification is improper and one

where no court has spoken on the class certification issue.  Notably, in reaching its conclusion,

*Andrews* cited the reasoning of the court in *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987)

wherein the court explained that "the Supreme Court...certainly did not intend to afford plaintiffs

the opportunity to argue and reargue the question of class certification by filing new but

repetitive complaints."  In both of the other cases relied on in *Andrews*, the courts were faced

with subsequent class actions wherein a previous court had denied class certification.  *See,

Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1989); *Robbin v.

Flour Corp.*, 835 F.2d 213 (9th Cir. 1987).

More recent caselaw demonstrates a trend towards allowing the use of the class vehicle,

at least in certain circumstances, where a previous court has not made a "definitive"

determination regarding the propriety of class certification.  For example, in *Yang v. Odom*, 392

F.3d 97 (3d Cir. 2004), the Third Circuit analyzed whether class claims are tolled if a previous

court denied class certification based on the inadequacy of the lead plaintiff, as opposed to the

"validity of the class itself."  The court first noted its agreement with cases such as *Salazar-

Calderon*, wherein otherwise time-barred sequential class actions are not permitted if a previous

court definitely determined that class treatment is inappropriate.  *Yang*, however, reasoned that a

"bright line" approach is not appropriate.   There, the court held,

> In keeping with our Circuit precedent..., and because we can discern no principled reason
> to rule otherwise, we hold that where class certification has been denied solely on the
> basis of the lead plaintiffs' deficiencies as class representatives, and not because of the
> suitability of the claims for class treatment, *American Pipe* tolling applies to subsequent
> class actions.

\*\*\*

> Drawing the line arbitrarily to allow tolling to apply to individual claims but not to class claims would deny many class plaintiffs with small, potentially meritorious claims the opportunity for redress simply because they were unlucky enough to rely upon an inappropriate lead plaintiff.  For many, this would be the end result, while others would file duplicative protective actions in order to preserve their rights lest the class representative be found deficient under Rule 23.  Either of these outcomes runs counter to the policy behind Rule 23 and, indeed, to the reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal*.

Yang, 392 F.3d at 111.

Similarly, the Ninth Circuit initially appeared to create a "bright line" rule prohibiting *American Pipe* tolling for sequential class actions.  *See, Robbin v. Fluor Corp.*, 835 F.2d 213 (9th Cir. 1987).  Subsequently, however, the holding in *Robbin* was narrowed such that tolling for class actions is now permitted in at least some circumstances.  In *Catholic Social Services, Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139 (9th Cir. 2000), the district court certified a class of individuals, but Congress later stripped federal courts of jurisdiction over the named plaintiffs.  *See also, Yang,* 392 F.3d at 107 (discussing *Catholic Social Services*).  The Ninth Circuit refused to allow the plaintiffs to amend their complaint and instructed the district court to dismiss the lawsuit.  Immediately following dismissal, plaintiffs filed a second class action lawsuit.  In the second lawsuit, the named plaintiffs satisfied the new jurisdictional requirement.  In distinguishing *Robbin*, the Ninth Circuit held,

> ...Plaintiffs in the class action now before us thus do not seek to cure any procedural deficiencies in the classes under Rule 23 certified in the first action because there were none.

> Plaintiffs in this case are thus in an fundamentally different posture from plaintiffs in cases in which subsequent class actions were not allowed.

*Catholic Social Services*, 232 F.3d at 1149.

14

Thus, while the Ninth Circuit may not necessarily adopt the Third Circuit's approach, both opinions conclude that a bright line approach is not appropriate.  Upon careful review of the reasoning from the opinions in these Circuits, the Court finds further support for its conclusion that *Andrews* does not create a bright line rule prohibiting class action tolling in *all* circumstances.  At its broadest, *Andrews* says that where a previous court denies class certification, *American Pipe* tolling is unavailable for subsequently filed class actions.  *Andrews* does not speak, however, to a situation in which no court has ever denied class certification, or the situation in *Catholic Social Services*, in which a previous court actually granted class certification.

Defendants also rely on *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) and *Bridges v. Dep't of Md. State Police*, 441 F.3d 197 (4th Cir. 2006).  Although *Griffin* is at odds with *Yang* in that *Griffin* precludes class tolling regardless of the reason class treatment was rejected, it does not undermine this Court's holding in this case.  Neither *Griffin* nor *Bridges* involved a situation where no class certification motion was either filed or ruled on by the previous court.[5]

Having concluded that *Andrews* cannot be read to create a bright line rule prohibiting *American Pipe* tolling for all subsequently filed class actions regardless of the status or pendency of a class certification motion, the Court now turns to whether this action can be maintained as a class action, given the specific procedural history involved in this matter.

---

[5]     *Bridges* comes closest to creating such a bright line rule.  In *Bridges*, plaintiffs filed a motion for class certification, which defendants opposed.  Plaintiffs then asked for additional discovery and the court subsequently denied the motion without prejudice.

As an initial matter, the parties dispute whether the procedural history of the *Ritt* Action is relevant to the analysis.  According to defendants, plaintiffs are attempting to ignore the *Ritt* Action and are improperly relying on the *Sanford* Action to toll the statute of limitations. According to defendants, "double" stacking has never been permitted by any court.  Defendants claim that tolling ceased as of February 6, 2002, the date the *Ritt* court denied plaintiffs' motion for class certification.  Defendants also claim that the complaint in *Ritt* sought certification of a nationwide class of all individuals who purchased *any* product.  Because a previous court denied class certification, class tolling is not available.  Defendants also point out that plaintiffs have previously taken the position that the *Ritt* Action is "related" to this case.

In response, plaintiffs argue that they need not rely on *Ritt* to save their claims. According to plaintiffs, some claims did not accrue until after the court denied plaintiffs' motion for class certification.  Thus, it would make no sense to require these plaintiffs to rely on the *Ritt* Action for tolling purposes, and "double stacking" could not possibly apply.  In addition, plaintiffs argue that *Ritt* only involved the sale of Tae-Bo products.  As these plaintiffs are specifically excluded from this case, *Ritt* is wholly inapplicable.  Plaintiffs further point out that the trial court initially denied class certification because the proposed class was ambiguous. As such, there has been no "definitive denial" of class certification.  Moreover, plaintiffs argue that the Ohio court of appeals reversed and vacated the trial court's order and, on remand, the trial court certified a statewide class.   Plaintiffs also point out that "double stacking" is not at issue because the *Sanford* Action was timely.  Since *Sanford* was timely in its own right, there can be no "double stacking."

Upon review, the Court finds that *Ritt* is not relevant to the analysis because it involved

claims for individuals who purchased Tae-Bo products.  The complaint is replete with allegations regarding Tae-Bo and Tae-Bo products.  One of the individually named defendants is the "founder" of Tae-Bo. Although the class definition asserted in the complaint is not expressly limited to callers purchasing Tae-Bo products, the complaint cannot be read so broadly as to include purchasers of any product.  Each named plaintiff purchased a Tae-Bo product and the Ohio court ultimately certified a statewide class consisting of individuals who purchased Tae-Bo products.  As purchasers of Tae-Bo products are expressly excluded from this lawsuit, the Court finds that the procedural history of *Ritt* is not relevant for determining whether this action can proceed as a class.  The Court further agrees that it would not make sense to apply an "anti-stacking" rule with respect to claims arising *after* tolling allegedly ended.  Defendants argue that any applicable tolling ceased on February 6, 2002.  A review of the chart submitted by defendants, however, demonstrates that a number of memberships were sold after this date. (*See*, Defendants' Appendix (nothing that many plaintiffs were sold memberships on December 15, 2002)).  Although some of these plaintiffs were also sold memberships prior to February 6, 2002, it makes no sense to require these plaintiffs to rely on the class determination made by the *Ritt* court for purposes of analyzing the second sales.  Regardless, at least one plaintiff, Michael Waslin, incurred no membership charges prior to February 6, 2002.  For these reasons, the Court concludes that the class certification denial in *Ritt* is not relevant for the purposes of determining whether this case can proceed as a class.

The Court now turns to whether the actions taken by the court in *Sanford* preclude class treatment of the claims asserted here.  As set forth above, the Court concludes that *Andrews* does not establish a categorical ban on the applicability of *American Pipe* tolling to subsequent class

17

actions.  Although the Court recognizes that Justice O'Connor cautioned that "[t]he tolling rule

of *American Pipe* is a generous one, inviting abuse," the Court also notes that the holding in

*American Pipe* reflects the Supreme Court's desire to achieve the right balance between the

desire to prevent stale claims, the benefits afforded under Rule 23, and judicial economy.

The Third Circuit essentially held that only "definitive denials" serve to trigger the anti-stacking

rule, thus creating the most generous exception among the circuits.  In this case, this Court need

not reach the issue of whether a particular denial is "definitive," in that the *Sanford* court never

expressly addressed class certification.  Although defendants filed a motion to strike class

allegations, the trial court never ruled on the motion.  Rather, after ordering the claims to

proceed in arbitration, there was some confusion as to whether class claims were also referred to

arbitration.  As a result, a motion for reconsideration and/or clarification was filed.  On June 13,

2003, the court denied the motion indicating that it had previously "dismissed the class claims as

moot," in light of the referral of the individual claims to arbitration.  Thereafter, the court

"mooted" plaintiffs' motion for class certification "in light of its ruling on plaintiffs' motion for

reconsideration."  This Court has reviewed the order compelling arbitration and concludes that

there was no discussion whatsoever regarding the validity of the class claims.  Moreover, the

case was subsequently transferred to a different judge in the district, who noted that the

arbitration order was "not the paragon of clarity."  On appeal, the Ninth Circuit reversed the

arbitration order and reinstated the class claims.  On remand, the trial court concluded that one of

the two federal claims, *i.e.*, the claim for the wrongful mailing of unordered merchandise, failed

to state claims for which relief may be granted.  In addition, the court concluded that the named

plaintiffs lacked standing to assert the remaining federal claim, *i.e.*, violation of the Electronic

18

Funds Transfer Act ("EFTA").  Thus, on September 30, 2008, the court issued an order dismissing the federal claims and declining to exercise supplemental jurisdiction over the state law claims.  It appears that plaintiffs sought leave to amend their complaint in the event the court dismissed the claims.  Ultimately, the court directed plaintiffs to file a motion for leave to amend in order to demonstrate that their proposed RICO claim would not be futile.  The court further directed that the proposed amended complaint not contain any previously dismissed claims.

On November 17, 2008, plaintiffs filed a motion for leave to amend.  The proposed amended complaint included a RICO claim, as well as the previously dismissed state law claims for which the court had declined to exercise supplemental jurisdiction.  In addition, plaintiffs purported to add certain unnamed class members, including Michael Waslin, who is a named plaintiff in this lawsuit, in order to cure the standing defect found to exist with respect to a previously dismissed federal claim.

Thereafter, defendants moved to strike the addition of the previously unnamed plaintiffs, the allegations regarding the previously dismissed federal claim, and the state law claims.  On December 23, 2008, the Court granted defendants' request to strike these allegations.  On March 6, 2009, the trial court denied leave to amend to include RICO claims, finding that such an amended would be futile.

Thus, while some "action" was taken with respect to the class allegations, there is no indication that the court issued any substantive or procedural ruling regarding the propriety of class treatment for the claims asserted in *Sanford*.  Even if some ruling could be gleaned from these orders, the Court notes that the class allegations were "reinstated" on appeal.

Based on the facts of this case, the Court finds that *Andrews* does not preclude class

19

action treatment.  One of the rationales supporting the *Andrews* decision is that it would be improper and a waste of judicial resources to allow parties to relitigate the issue of class certification and indefinitely extend the statue of limitations for class actions.  Here, however, the issue of class certification was never really litigated in *Sanford*.  Thus, the concerns espoused in *Andrews* and the early cases involving the anti-stacking rule are not present here.  Moreover, this situation is not akin to *Yang*, wherein the Third Circuit permitted *American Pipe* tolling in subsequent class actions where the named plaintiff was deemed inadequate.  Courts disagreeing with *Yang* seem concerned with the ability of plaintiffs' attorneys to continue to substitute new named plaintiffs until they "get it right."  Here, however, no such issue arises.  This Court concludes that, where there has been no determination at all regarding the appropriateness of class certification, and a court of appeals has "reinstated" the class allegations, subsequent class treatment is not precluded.   In the same vein, the Court's holding does not raise issues of "indefinite" stacking.  Where no prior ruling exists (definitive or otherwise), indefinite stacking is highly unlikely to arise.  It would only occur in the event a number of courts continue to avoid the issue of class certification.  The Court finds that its holding here appropriately balances the competing interests faced in *American Pipe*.   The interests in preventing stale claims must be balanced with the benefits afforded under Rule 23.  In this case, the defendants are well aware of the nature of the claims and the evidence related to those claims and, accordingly, allowing the claims to proceed as a class does not unfairly prejudice their rights.  At the same time, plaintiffs, who may not otherwise file costly individual claims, do not lose the protections afforded under Rule 23 simply because a court never reaches the issue of class certification.  Judicial economy is also not hindered.  To hold otherwise may encourage litigants to file duplicative lawsuits out

of concerns that certain courts may never reach the issue of class certification.  Nor is it likely that a large number of "stacked" class action lawsuits will be filed in this situation.  Rule 23 mandates that courts address issues of class certification "as soon as practicable."  Thus, courts should address class certification in most instances, obviating the need for subsequently filed class actions.

Defendants rely on *Bridges v. Dep't of Md. State Police*, 441 F.3d 197 (4th Cir. 2006).  In that case, the trial court summarily denied plaintiff's motion for class certification "without prejudice."  *Bridges*, however, is easily distinguishable because the plaintiffs there essentially asked the court to delay ruling on the motion.  They sought additional discovery and the court noted that it would revive the motion for class certification when the plaintiffs filed a reply brief.  Accordingly, unlike here where the court "mooted" the class allegations over plaintiffs' objection, *Bridges* involved an apparent abandonment of the class certification issue.[6]  Defendants also rely on *In Re Westinghouse Securities Litigation*, 982 F.Supp. 1031 (W.D. Pa. 1997).  In *Westinghouse*, the district court dismissed plaintiffs' complaint with prejudice and appears to have dismissed as "moot" plaintiffs' motion for class certification.  In rejecting a subsequent class action as time barred, the court held that "dismissal of an entire civil action is about as 'definitive' a disposition of a motion for class certification as one is likely to find."  *Id.*

---

[6]  *In Re Dynamic Random Access Memory Antitrust Litigation*, 516 F.Supp.2d 1072 (N.D. Cal. 2007) also does not undermine the Court's reasoning here.  In that case, plaintiffs attempted to stack class actions where motions for class certification were still pending in other courts.  The Court agrees that the an exception to the anti-stacking rule would be inappropriate under those circumstances because it would seriously undermine judicial economy.  Moreover, plaintiffs would eventually receive a ruling on the class certification issue.

at 1035.  Defendants make the same argument here.  This Court, however, rejects the argument and disagrees with the rationale in *Westinghouse*.  Dismissal of a claim is not akin to a ruling on class certification.  The two concepts are entirely separate and distinct.  Whether class treatment is appropriate is wholly independent of whether a claim succeeds on the merits.  Again, Rule 23 cautions that a ruling on class certification should be made "as soon as practicable" to avoid the problem faced in *Westinghouse*.  Accordingly, the court declines to adopt the reasoning in that case.[7]

Having concluded that plaintiffs' complaint does not violate the "anti-stacking" rule, the Court turns to the timeliness of the specific claims asserted in this case.  Defendants argue that *American Pipe* tolling cannot be uniformly applied to all of the state law claims asserted by plaintiffs.  According to defendants, the issue of tolling both class and individual claims is a matter of state law.  Defendants point out that not all states recognize *American Pipe* tolling with respect to individual claims, let alone claims brought on behalf of a class.  Because the Court finds that the state law claims asserted in *Sanford* are tolled under Section 1367 in any event, the Court need not reach whether state law would also permit the filing of these claims under *American Pipe*.[8]

---

[7]    The Court is careful to note that it is not suggesting that the *Westinghouse* court should have ruled on the class certification motion first.  Every case is different and some cases appear to be better suited for summary disposition prior to a ruling on class certification.  This Court simply concludes, however, that a subsequent class action is not time barred if a court never reaches the issue of class certification.

[8]    Defendants argue at length regarding principles of cross-jurisdictional tolling.  As the Court is not addressing whether the state law claims may be tolled under *American Pipe*, the Court

Defendants argue that plaintiffs' RICO claims are not subject to tolling under *American Pipe* because they were not asserted in *Sanford*.[9]  In response, plaintiffs argue they asserted the claims in a motion for leave to amend the complaint.  Thus, defendants were on notice of the RICO claims.

Upon review, the Court concludes that the RICO claims must be dismissed because they were not asserted in *Sanford*.  In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), Justice Powell wrote a concurring opinion in which he indicated that, "[i]t is important to make certain...that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit."  *Id*. at 355.  Further, he noted that,

> when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.' Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.

*Id*. (Internal citations omitted).

Since *Crown, Cork & Seal*, courts interpreting Justice Powell's concurrence have held that only the claims expressly alleged in a previous federal lawsuit are subject to tolling.  *See, e.g.*, *Hutton v. Deutsche Bank,* 541 F.Supp.2d 1166 (D. Kan. 2008)(tolling under *American Pipe* is only available for the same claims asserted in the previous case);  *Spann v. Community Bank of Northern Virginia*, 2004 WL 691785 ("the *Davis* complaint only tolled the statute of

_____

need not address defendants' concerns.

[9]     The arguments pertaining to dismissal of the RICO claims are contained in the briefing of Defendants' Motion for Partial Reconsideration (See, Docs. 51, 53, 57).

limitations as to those claims actually alleged against [defendant] in the *Davis* action").  *Stutz v. Minnesota Mining Mfg. Co.*, 947 F.Supp. 399, n.2 (S.D. Ind. 1996)("for the legal fiction of tolling to be equitable to the defendant, the claims...must be identical").  Plaintiffs cite no law to the contrary and make no effort to distinguish the cases on which defendants rely.

Although plaintiffs *attempted* to assert a RICO claim in *Sanford*, the claims were never actually pending.  The Court finds that, on the facts of this case, plaintiffs' RICO claims are not subject to tolling under *American Pipe* because they were not asserted in *Sanford*.  As defendants point out, plaintiffs made no effort to assert their RICO claims in *Sanford* until six years after the filing of the complaint.  Moreover, the claims were asserted only after the *Sanford* court dismissed all of the federal claims actually asserted.   As repeatedly noted, the *American Pipe* tolling doctrine is a "generous one, inviting abuse."  *Crown, Cork & Seal Co.,* 462 U.S. at 354 (concurring opinion).  Consistent with this principle, the Court finds that because plaintiffs never expressly asserted their RICO claims in the *Sanford* Action, *American Pipe* tolling does not apply.  Accordingly, the RICO claims are dismissed.

Based on the foregoing, plaintiffs' EFTA claim (count one) is not barred by the statute of limitations.  In addition, the Court concludes that this claim may be asserted on behalf of a class.  The RICO claims (counts two through five) are not subject to tolling and are, therefore, dismissed as time-barred.

2.        Tolling under 28 U.S.C. § 1367(d)

Unlike the judicial tolling doctrine espoused in *American Pipe*, 28 U.S.C. § 1367 provides for statutory tolling for certain claims.  That provision is directed at a federal court's supplemental jurisdiction.  Specifically, the statute provides in relevant part as follows,

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....

***

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

Defendants argue that the statutory tolling provision set forth in Section 1367(d) does not eviscerate the anti-stacking rule set forth in *Andrews*.  Defendants argue that plaintiffs, who seek to assert otherwise time-barred claims, bear the burden of demonstrating that Section 1367(d) allows the re-assertion of claims on a classwide basis.  Defendants also claim that, as an exception to the applicable statutes of limitations, Section 1367(d) must be read narrowly. Defendants further claim that nothing in the text of Section 1367 indicates that Congress intended tolling to extend to class claims.  Defendants also argue that Section 1367(d) applies only to parties *named* in the federal lawsuit.  Because absent class members are not "named parties," they may not rely on Section 1367(d).  Defendants further claim that, to accept plaintiffs' proposed application of 1367(d), states would be forced to accept cross-jurisdictional tolling and ignore anti-stacking rules.

In response, plaintiffs argue that anti-stacking and cross-jurisdictional tolling have nothing to do with Section 1367(d).  According to plaintiffs, it is well-settled that Section 1367(d) applies to all 50 states.  Thus, defendants' cross-jurisdictional tolling arguments are irrelevant.  Plaintiffs also argue that the "anti-stacking" rule is designed to prevent relitigation of prior class action determinations.  In this case, no determination of any kind has been made with

25

respect to the state law claims.  Thus, the anti-stacking rule, to the extent it could be applied to Section 1367(d), is not violated.  Plaintiffs further argue that defendants' statutory construction argument is misplaced.  According to plaintiffs, nothing in Section 1367(d) prevents tolling for subsequent class actions.   Plaintiffs also claim that tolling is necessary to prevent an unjust result.  The court in *Sanford* expressly indicated that supplemental jurisdiction over plaintiffs' state law claims would not be accepted because plaintiffs could refile their claims in state court.

As an initial matter, the Court notes that this appears to be an issue of first impression. Neither the parties nor the Court uncovered any caselaw interpreting the tolling provision set forth in Section 1367(d) with respect to unnamed class members.  Thus, the Court begins, as it must, with statutory interpretation.  Section 1367(d) provides,

> (d) The period of limitations for any claim asserted under subsection (a)...shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

Although the statute is silent as to whether unnamed class members may benefit from tolling, the Court finds that well-settled principles of class action law dictate that absent class members may take advantage of Section 1367 tolling.  As plaintiffs point out, absent class members are considered "parties" for certain purposes.  *See, Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002)(unnamed class member considered "party" for purposes of filing appeal).  *See also, Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)(unnamed class members who chose not to opt out of class still considered "parties" for purposes of appeal).  Most notably, however, the Supreme Court's decision in *American Pipe* dictates that unnamed class members are considered "parties" for purposes of the filing of a complaint.  In concluding that unnamed class members are entitled to judicial tolling, the Supreme Court necessarily concluded that claims filed by representative

26

class members are also deemed filed by unnamed class members.  *American Pipe* and its progeny was well-settled law at the time Section 1367(d) was enacted.  Thus, had Congress intended to exclude unnamed class members from the ambit of Section 1367(d), it would have been necessary to do so expressly.  Accordingly, the Court concludes that, assuming all other requirements are satisfied, unnamed class members are entitled to the tolling protections afforded by Section 1367(d).

Although a closer call, the Court also finds that Section 1367(d) does not prohibit the filing of a subsequent class action based on the facts of this case.  In other words, the anti-stacking rule announced in *Andrews* cannot fairly be applied here.  The context of *Andrews* is critical when viewed in comparison to the  mechanics of Section 1367.  In general, Section 1367 addresses a federal court's jurisdiction over related state law claims.  Section 1367(c) permits a federal court to decline to exercise supplemental jurisdiction over state law claims once the federal claims are dismissed.  Often, and as in this case, the federal court takes no action with respect to the state law claims.  Rather, the federal court addresses only the federal claims.  The very purpose of Section 1367(d) is to prevent plaintiffs who join federal and state claims in one lawsuit from losing their state claims because a federal court ultimately declines to exercise jurisdiction over them.  It makes little sense, in turn, to bar these plaintiffs from proceeding as a class.  In this case, not only has no ruling regarding class certification been made, but no disposition of any aspect of the claims has occurred.  Any other outcome would encourage the filing of parallel state and federal actions.[10]

---

[10]     In essence, the Court agrees with defendants' contention that anti-stacking principles apply to claims tolled under Section 1367(d). On the facts of this case, however, the anti-stacking rule is not

Although raised more thoroughly in the context of *American Pipe* tolling, the Court will briefly address defendants' concerns regarding cross-jurisdictional tolling. To the extent defendants intended any argument regarding cross-jurisdictional tolling to apply to Section 1367 tolling, the argument is rejected. In *Jinks v. Richland County*, 538 U.S. 456 (2003), the Supreme Court addressed whether Section 1367(d) is constitutional. There, the South Carolina Supreme Court found Section 1367(d) to be unconstitutional because it exceeded congressional power by regulating state courts. Specifically, the state court held that Section 1367(d) did not toll the state statute of limitations because South Carolina did not recognize such tolling under state law. In unanimously rejecting the argument, the Supreme Court concluded that the enactment of Section 1367(d) is not outside the scope of Congress's power to "to constitute Tribunals inferior to the Supreme Court, and to assure that those tribunals may fairly and efficiently exercise the judicial Power of the United States." *Id*. at 462 (internal citations and quotations omitted). Provided the statute is "conducive to the due administration of justice and is plainly adapted to that end," no constitutional infirmity exists. *Id*. Upon review, the Court concluded that the statute satisfies these criteria because "it provides an alternative to the unsatisfactory options that federal judges faced when they decided whether to retain jurisdiction over supplemental state-law claims that might be time barred in state court." *Id*. It further "eliminates a serious impediment to access to the federal courts on the part of plaintiffs pursuing federal- and state-law claims that derive from a common nucleus of operative fact." *Id*. at 463. Accordingly, the Supreme Court has already  determined that Section 1367(d)'s cross-jurisdictional tolling provisions are not unconstitutional.

---

violated.

For the same reasons espoused in *Jinks*, the Court finds that any concerns regarding the applicability of the anti-stacking rule are misplaced.  As an initial matter, defendants concede that federal anti-stacking rules should apply to tolling asserted under Section 1367(d).  (*See*, Doc. 35 at pp. 19-20)(generally discussing the applicability of *Andrews*).   Moreover, Section 1367(d) is a federal statute requiring application of federal law.   Accordingly, the Court concludes that federal anti-stacking principles apply to tolling asserted under Section 1367(d).

Plaintiffs concede that tolling under Section 1367 is unavailable for the federal claims asserted in this case.  Accordingly, the Court now turns to whether the state law claims asserted benefit from statutory tolling.  Defendants argue that only those claims set forth in the *Sanford* Action are entitled to tolling under Section 1367(d).  Plaintiffs, on the other hand, argue that all claims related to the initial state law claims benefit from tolling.  According to plaintiffs, the word "claim" must be read to include any legal theory applicable to the facts asserted in *Sanford*.

Upon review, the Court finds that only those state law claims actually asserted in *Sanford* are subject to statutory tolling.  In other words, only the state law claims for fraud, conversion, and unjust enrichment, which were expressly alleged in *Sanford*, may be tolled.  To read the statute as broadly as plaintiffs suggest would lead to the illogical result in which a plaintiff could file a complaint in federal court containing only a federal cause of action.  In the event the court disposed of the federal cause of action, the plaintiff could file an untimely complaint in state court containing a state law cause of action "arising" from the facts asserted in the federal complaint.  This would be so even though the plaintiff asserted no state law cause of action in the federal complaint.  The Court finds that the only reading that makes any logical sense is that,

29

in order to benefit from tolling, the claim must have been expressly asserted in federal court. This is especially so here, where the federal complaint contains separately identified "claims." The limited case law addressing this issue is consistent with this Court's ruling.  *See, e.g.*, *Rester v. McWane, Inc.*, 962 So.2d 183 (Ala. 2007)(finding tolling under Section 1367(d) applicable to only those claims expressly contained in federal complaint); *Wardle v. Lexington-Fayette Urban Cty. Gov't,* 2006 WL 2788951 (Ct. App. Ky. Sep. 29, 22006)(same); *Brengettcy v. Horton*, 2006 WL 1793570 (N.D. Ill. May 5, 2006)(same).[11]

Having concluded that the fraud, conversion, unjust enrichment claims are subject to tolling under Section 1367, the Court now turns to whether the refiling of those claims is timely. Defendants argue that none of the claims are timely because plaintiffs filed them more than 30 days from September 30, 2008, the date on which the *Sanford* court declined to exercise supplemental jurisdiction.  In response, plaintiffs argue that the claims are timely because, under Section 1367(d), the statute of limitations stopped running during the pendency of *Sanford* and did not start to run again until after the claims were dismissed.   If plaintiffs' interpretation of the statute is accepted, nearly all of the claims are timely.  In the alternative, plaintiffs argue that the claims filed by Waslin, Callahan, and the Smiths are timely because they were filed within 30

---

[11]     Plaintiffs argue that *Brengettcy* actually supports their position.  To the contrary, *Brengettcy* expressly held that only the claims actually asserted in the federal complaint could be tolled under Section 1367(d).  The court did, however, allow the plaintiffs to amend the complaint under the relation-back doctrine.  In that case, however, the state court complaint was removed and consolidated with the originally filed federal complaint.  Thus, the relation back doctrine could be used to allow an amendment to the originally filed federal complaint.  The same does not hold true in this case.  Accordingly, *Brengettcy* does not support plaintiffs' position.

30

days of December 23, 2008, the date on which the *Sanford* court struck the claims.

Section 1367(d) provides as follows,

(d) The period of limitations for any claim asserted under subsection (a)...*shall be tolled while the claim is pending and for a period of 30 days after it is dismissed* unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d)(emphasis added).

There are three possible interpretations of this statute. *See, Turner v. Kight*, 957 A.2d. 984 (Md. Ct. App. 2008); *Goodman v. Best Buy*, 755 N.W.2d 354 (Minn. Ct. App. 2008). As set forth in *Turner* and *Goodman*, the statute could arguably be interpreted as "annulling" the state statute of limitations. In this manner, the state statute of limitations period is completely replaced "by a fixed period: the thirty-day period after federal dismissal." This interpretation is known as the "substitution approach." The second, and related interpretation, is that Section 1367(d) only tolls the expiration of the statute of limitations,

This interpretation treats that period in the statute–the federal claim period plus thirty days–as a single span of time. If the state limitations period runs out during that span, the thirtieth day after dismissal becomes the new filing deadline. Under these circumstances, the outcome is the same as under the 'annul and replace' interpretations. If, however, the state limitations period does not run out during that span of time, the state limitations period is unaffected and terminates without regard to any federal court filings.

*Goodman*, 755 N.W. 2d at 357. The second interpretation is known as the "extention approach." The third possible interpretation is that Section 1367(d) suspends the running of the statute of limitations, *i.e.*, "the clock is stopped and the time is not counted–while the federal court is considering the claim and for thirty days after the claim is dismissed." *Id*. This is referred to as the "suspension approach."

As an initial matter, the Court rejects the substitution approach. It does not appear that any court has adopted that approach and the Court finds that the statutory language cannot fairly

31

be read to impose such a drastic result.  In essence, upon the filing of the lawsuit, all state statutes of limitations would be replaced for all claims with a uniform federal statute of limitations.  This would be so regardless of the length of the limitations period for the underlying claim.  This could serve to dramatically shorten a statute of limitations.  For example, a breach of contract claim may have a lengthy statute of limitations.  In the event an injured party filed a lawsuit in federal court and the federal court quickly resolved the federal issue and declined to exercise supplemental jurisdiction, the injured party would only have 30 days to file the lawsuit in state court.  This is so even if many years remain before the state statute of limitations would bar the claim.  The Court finds that this reading is wholly inconsistent with the purpose of the statute, which is to avoid the forfeiture of state law claims.  Accordingly, the Court finds that this reading of the statute must be rejected.

Although no court has expressly adopted the substitution approach, courts appear evenly split on whether the statute requires the suspension or the extension approach.  *Compare*, *Turner,* 957 A.2d 984; *Goodman*, 755 N.W.2d 354 ; *Bonifield v. County of Nevada*, 94 Cal. 4 th 298 (Ca. Ct. App. 2001)(adopting the suspension approach) *with Kolani v. Gluska*, 64 Cal. App. 4th 402 (Ca. Ct. App. 1998); *Harris v. O'Brien*, 2006 WL 73452 (Oh. Ct. App. Jan. 12, 2006); *Weinrib v. Duncan*, 962 So.2d 167 (Ala. 2007)(adopting the extension approach).[12]   Upon review, the

---

[12]     Defendants cite *Long v. Bando Mfg. Of America, Inc.*, 201 F.3d 754 (6th Cir. 2000) in support of their argument that the statute of limitations is tolled only until 30 days after dismissal.  In that case, however, the Sixth Circuit was not addressing the issue presented here.  Rather, the issue was whether the trial court possessed the discretion to remand a case under Section 1367.  The Sixth Circuit then cited *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, in support of its conclusion.  In *Edmonson*, the D.C. Circuit noted that "1367(d) tolls the state statute of limitations on any state claim

Court finds that the fairest reading of the statute is the suspension approach.  To accept the extension approach, *i.e.*, only the expiration of the statute of limitations is tolled, would render the statute inapplicable to a number of cases.  As set forth above, in the event the statute of limitations would not otherwise expire during either the pendency of the federal lawsuit, or within 30 days of the dismissal thereof, Section 1367(d) would have no effect on the claim.  However, the statutory language is written such that *any* claim filed "*shall be*" tolled.  In order to give effect to the plain meaning and mandatory nature of the language, this Court finds that extension approach must be rejected.  On its face, Section 1367(d) must have a tolling effect on all supplemental state law claims.  The suspension approach is the only approach that comports with the plain meaning of the statute.  By essentially "stopping the clock" during the pendency of the federal lawsuit, all claims receive a tolling benefit and the statute can be uniformly applied.  Courts adopting the extension approach criticize the suspension approach because it may serve to drastically extend the statute of limitations.  In the event a case is pending in federal court for a significant time, none of that time is counted against the running of the statute of limitations.  Thus, a plaintiff could sit idly by and let years pass before pursuing the claim in state court.  According to these courts, Congress simply wanted to ensure that state courts would not bar timely claims over which federal courts ultimately decline supplemental jurisdiction.  As such, a 30-day grace period sufficiently prevents the harm envisioned by Congress.  This Court, however, agrees with the *Turner* court, which noted,

> over which a federal court has jurisdiction until 30 days after its dismissal."  Nothing in this language undermines this Court's conclusion.  The statute of limitations is stopped, and does not begin to run again, until 30 days after dismissal.  Regardless, the Sixth Circuit simply was not addressing the timeliness of a claim.

33

> The point...that an extension approach is entirely satisfactory to avoid forfeitures and that a suspension approach is not necessary to achieve that objective, is undoubtedly true. The fact that a better mechanism–one less intrusive on State sovereignty and interests–could, or perhaps *should*, have been chosen does not require a conclusion that Congress intended that mechanism if the language it used indicates otherwise.

*Turner*, 957 A.2d at 181 (emphasis in original)(noting that the suspension approach is consistent with *American Pipe* and *Crown, Cork & Seal*). In all, the Court concludes that the only reading of Section 1367(a) that gives meaning to all of the words chosen by Congress is the suspension approach. Accordingly, the time period during which the *Sanford* action was pending, plus 30 days following dismissal, is not considered in determining whether the fraud, conversion, and unjust enrichment claims are timely under Section 1367(d).[13] Having reviewed the chart submitted by plaintiffs (Doc. 40), the Court concludes that all claims, with the exception of claims noted as "requires fraudulent concealment tolling," were timely refiled under Section 1367(d). The Court now turns to tolling based on fraudulent concealment.

  3.  Tolling based on fraudulent concealment

  In the preceding sections, this Court concluded that the federal claims are timely under *American Pipe* and that the state law claims asserted in *Sanford* are timely under Section 1367(d). Thus, the sole remaining issue is whether the previously unasserted state law claims, *i.e.*, violation of the consumer protection statutes, negligent misrepresentation, and money had and received, are timely. Defendants argue that plaintiffs may not rely on the fraudulent concealment doctrine because plaintiffs fail to properly plead that defendants prevented them from learning the facts necessary to timely assert their claims. Defendants further argue that the

---

[13]  The Court agrees with defendants, that the claims were pending only until September 20, 2008, the date on which the *Sanford* court declined to exercise supplemental jurisdiction.

complaint contains allegations that plaintiffs received "notice" of the improper charges. According to defendants, these allegations negate any claim of fraudulent concealment. In response, plaintiffs point out that the courts in *Sanford* and *West* previously concluded that dismissal was not appropriate. The *Sanford* court indicated that the issue would require a factual analysis, which was inappropriate at the dismissal stage. The *West* court concluded that certain charges were appropriately tolled based on fraudulent concealment, while others were not.

Although not expressly argued by the parties, the Court concludes that, on the facts and procedural history of this case, plaintiffs may not rely on the fraudulent concealment doctrine in order to assert state law claims not previously asserted in *Sanford*. In this case, plaintiffs requested, and this Court agreed, that unnamed class members be entitled to the benefits associated with Section 1367(d) tolling. Without a doubt, the named plaintiffs in *Sanford* knew of the facts supporting their claims by March 28, 2002, the date *Sanford* was filed. There, plaintiffs expressly asserted a claim for fraud, yet did not assert a claim for negligent misrepresentation. The Court rejects any argument that the plaintiffs in *Sanford* could now argue that the negligent misrepresentation claim is subject to equitable tolling. More than six years passed from the date *Sanford* was filed until the date the first complaint was filed in this MDL. To be logically consistent, the Court concludes that unnamed class members also cannot argue equitable tolling with respect to the state law claims. To obtain tolling relief under Section 1367(d), unnamed class members point to *Sanford* in support of their argument that their otherwise untimely claims are subject to tolling. Plaintiffs themselves invoke the statutory tolling principles contained in Section 1367(d) and ask the Court to apply those principles to unnamed class members. Plaintiffs further argue that unnamed class members are "parties" for

35

purposes of the statute of limitations.  The rationale underlying these arguments is that unnamed class members opted not to file their own lawsuits based on the pendency of the *Sanford* Action. Although created on somewhat of a fiction, the theory is that unnamed class members have some knowledge of the lawsuit.  The Court accepted this argument for the purposes of affording statutory tolling benefits to unnamed class members.  The Court further concludes that unnamed class members are also subject to any detriments arising from statutory tolling.  Here, the Court concluded that Section 1367(d) does not permit tolling for unasserted state law claims.  This holding will be applied to all unnamed class members.

        4.       Tolling based on judicial estoppel

       Plaintiffs argue that based on defendants' actions in *Sanford*, defendants are estopped from asserting a statute of limitations defense.

       "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d 1214, 1217-18 (6th Cir.1990).  "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (citations and quotations omitted). "Although there is no set formula for assessing when judicial estoppel should apply, it is well-established that at a minimum, a party's later position must be 'clearly inconsistent' with its earlier position...." *Id*. (Internal citations and quotations omitted).  The doctrine of judicial

36

estoppel is to be applied with caution because the doctrine precludes examination of the truth of either the prior or subsequent statement.  *Id*.

Upon review, the Court finds that judicial estoppel is inapplicable on the facts of this case.  According to plaintiffs, defendants made two representations to the Court in *Sanford*, which preclude them from asserting a statute of limitations defense here.  The first statement is as follows,

> Plaintiffs contend that, if they refile their state law claims as a new state court action, it might be removable under the [Class Action Fairness Act.] Such speculation provides no basis to exercise supplemental jurisdiction.  Any number of events may defeat removal jurisdiction under the CAFA.  *Plaintiffs might choose to re-file this case as a state-only class*, as in the *West* case pending in San Diego state court and the *Ritt* case pending in Ohio state court; Defendants may elect not to remove the case; or a court may conclude that one of the CAFA's exceptions to removal is applicable.

(Emphasis added).

This statement, however, has nothing whatsoever to do with the statute of limitations. Defendants are simply representing to the *Sanford* court that the Class Action Fairness Act is not a basis on which the court should retain supplemental jurisdiction.  Plaintiffs argue that the highlighted portion of the statement indicates that defendants represented to the court that it would not contest any timeliness issues in state court.  This Court disagrees.  Defendants are simply pointing out that certain events might prevent application of the Class Action Fairness Act.  Defendants are not arguing that the claims could actually proceed in state court.

In addition, plaintiffs point to the following statement,

> A case on the merits is not necessarily prevented here, as the Court previously dismissed numerous state law claims without prejudice and thus state law claims can be pursued in the appropriate state court(s).

Upon review, this Court concludes that this statement is not 'clearly inconsistent' with

the arguments plaintiffs make here.  As an initial matter, this statement can only be applied, at best, to the state law claims.  Moreover, with regard to the state law claims, defendants here argue that the state law claims cannot proceed as a class action.  This statement has nothing whatsoever to do with whether subsequently filed state law claims can be brought on behalf of a class.  In addition, the statement begins with the phrase "a case on the merits is not *necessarily* prevented here."   This statement cannot fairly be read as an indication that defendants would not contest the timeliness of state law claims brought on behalf of absent class members.  As such, judicial estoppel does not apply.

**CONCLUSION**

Defendants' Motion to Dismiss should be GRANTED in PART and DENIED in PART. The following claims are dismissed: all claims for negligent misrepresentation, money had and received, all claims asserted under state law consumer protection statutes, and all RICO claims. In addition, all claims for which fraudulent concealment tolling is required, as set forth in Doc. 40, are dismissed.  All other claims remain pending.  Defendants' request to strike the class allegations is DENIED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 4/16/10

38